UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
L & LEUNG LEATHERWARE LIMITED,

                    Plaintiff,

          -against-

COLLECTION XIIX LTD. and LISA NUNZIATA,

                    Defendants.
----------------------------------------X

17 Civ. 7374

COMPLAINT

Plaintiff L & Leung Leatherware Limited ("L & Leung" or "Plaintiff"), as and for its Complaint herein against defendants Collection XIIX Ltd. ("Collection") and Lisa Nunziata ("Nunziata" and, with Collection, "Defendants"), alleges as follows.

### Nature Of The Action

1. This action arises out of the wrongful scheme of Collection and Nunziata to misappropriate the entire business of L & Leung, including but not limited to its cash, customer relationships, vendor relationships, employees, trademarks and accounts receivable. Damages to date as a result of Defendants' wrongful conduct exceed $4 million and are growing daily.

### The Parties, Jurisdiction and Venue

2. L & Leung is a corporation organized under the laws of the Hong Kong, with its principal place of business located in Hong Kong.

3. Upon information and belief, Collection is a corporation organized under the laws of the State of New York, with its principal place of business at 1370 Broadway, 17th Floor, New York, NY 10018. Upon information and belief, Collection is one of the premier leaders in design, brand, licensing and product development in the fashion accessory industry.

4. Upon information and belief, Nunziata is a citizen of the State of New

York, with a business address at Collection's office at 1370 Broadway, 17th Floor, New York, NY 10018.

5. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7. This Court has personal jurisdiction over Defendants because they are citizens of this State. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Collection resides in this District and a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

Facts Common To All Claims

A. Background.

8. For over thirty years, L & Leung has been engaged in the design, product development, production and sales of sophisticated genuine leather handbags and cosmetic bags for renowned brands for which L & Leung owns trademarks, including Emma Fox, envy, L & Leung and Angel By L'Martino.

9. L & Leung's annual revenues from US sales have been in excess of $9 million, averaging approximately $750,000 a month.

10. Andrew Leung is the Founder and Managing Director of L & Leung. L & Leung is owned by Andrew Leung and his wife, with each holding a 50% interest.

11. In or about 2009, L & Leung and Nunziata entered into an agreement (the "Agreement"; Ex. 1 hereto) providing for Nunziata to "manage L & L's [L & Leung's] operations in USA and represent the business transactions of this operation in the interest of L & L", as well as "represent L & L for its commercial matters regarding its brand and private label

business and general administration in US", in return for salary and commissions (Agreement at Wherefore clause ¶ 3 and § 3).

12. Thereafter, the parties used a company known as Metamorphosis New York, Inc. ("Metamorphosis") to sell goods on behalf of L & Leung.  Andrew Leung and Nunziata are the owners of Metamorphosis.

13. Metamorphosis would sell handbags to L & Leung customers; the customers would pay L & Leung, and L & Leung would provide Metamorphosis with its share of sales and Nunziata with her compensation.

14. In addition, L & Leung would provide loans to Metamorphosis to finance Metamorphosis' expenses and operations.

15. In or about March 2017, L & Leung, in an attempt to cut expenses, asked Nunziata to try to find a finance partner to finance Metamorphosis' expenses, instead of L & Leung continuing to make loans to Metamorphosis.  Andrew Leung made it clear to Nunziata that, although L & Leung was asking Nunziata to find a different financing source, L & Leung would be continuing to manufacture its product for sale in the United States.  (See, e.g., emails at Ex. 2 hereto).

16. Shortly thereafter, Nunziata advised Andrew Leung that she was in discussions with Collection, among other potential finance partners (Ex. 3 hereto).

17. Nunziata clearly understood that she was asked to find a finance partner. For example, in an email dated April 29, 2017, she wrote to Andrew Leung that she was continuing to search for a "finance partner" and was also considering entering into an arrangement with a factor.  (Ex. 4 hereto).

18. In or about mid-May 2017, Nunziata advised Andrew Leung that she was

close to a financing deal with a company known as "Haskell". In response, Andrew Leung made it clear that L & Leung would continue manufacturing its product for sale in the US. Andrew Leung wrote to Nunziata: "Please rest assure that with my new partner factories, the quality of the products will be very much improved. Also, because with less overhead that [*sic*] we have now [e.g., the loans L & Leung had been making to Metamorphosis], our price will be more competitive". (Ex. 5 hereto).

B.      Wrongdoing By Collection And Nunziata.

19.     However, while Nunziata was continuously informing Andrew Leung that she was looking for a finance partner, she and Collection were instead engaging in a scheme to misappropriate the entire L & Leung business in the U.S.

20.     In particular, by emails beginning on June 8, 2017, Nunziata, acting on behalf of Collection, began advising all parties involved with L & Leung that L & Leung had "merged" into Collection and was ceasing its business.

21.     For example, by email dated June 8, 2017, she wrote to GS1 US Inc. and advised it that on June 14, 2017 L & Leung "Merged to Collection XIIX Ltd." and was ceasing to operate (Ex. 6 hereto ("L & Leung is not using and does not intend to use this GTIN company prefix in the future")).

22.     Moreover, on June 15, 2017, Nunziata, through those acting on behalf of herself and or Collection, wrote to numerous long-time customers of L & Leung and advised them that it was "official" and that L & Leung was "merging" into Collection, including emails to Lord & Taylor/Hudson Bay, Home Shopping Network, Gabe's, Stein Mart, Boston Proper, Bealls Inc., Burlington Inc., Starboard Cruise and/or Bloomingdale's Outlet, among others (the "L & Leung Customers"; Ex. 7 hereto).

23.     Tellingly, Defendants purposefully hid from L & Leung that they were

wrongfully advising L & Leung's Customers and the public that L & Leung had merged into Collection and had ceased operations. For example, by email dated June 17, 2017, Nunziata wrote to L & Leung that discussions with Collection (as a potential finance partner) were merely ongoing (Ex. 8 hereto (Nunziata wrote that she was "speaking to Collection XIIX. It appears that the []Collection XIIX deal could happen")). The obvious purpose of this communication was to cause L & Leung to refrain from taking any action before the business had been fully misappropriated by Defendants.

24. Also on June 15, 2017, Nunziata, who was in possession of a check made payable to L & Leung in the amount of $51,873.00 from customer Christopher & Banks Company ("C&B"), opened up a new account and deposited the check in the new account (see Ex. 9). When L & Leung asked Nunziata about the check, Nunziata fraudulently omitted the fact that she had cashed the check for her own benefit. Instead, by email dated June 21, 2017, she wrote: "C&B is on the watch list for bankruptcy. I understand they are paying late. I will get more info" (Ex. 10 hereto)).

25. Nunziata also misappropriated other checks made payable to L & Leung for a total amount misappropriated (including the C&B check) of $182,636.07.

26. Further, on or about June 20, 2017, Collection prepared and circulated a press release (the "Press Release") stating that "Collection 18 announced today that it had reached a definitive agreement to acquire the assets of L & Leung . . ." (see Ex. 11 hereto). In the press release, Drew Pizzo, president of Collection, stated, fraudulently, that "L & Leung is a transformative addition to our portfolio of brands and product offerings and enhances our position as a leader in the fashion accessories industry" (Ex. 11).

27. Thereafter, Defendants directed L & Leung customer Hudson Bay

Company to make payments owed to L & Leung to Collection, and provided an Assignment and Assumption Agreement executed by Collection (Ex. 12 hereto).  Further, Defendants advised L & Leung customer Macy's that it did not have to make a $105,594 payment owed to L & Leung.

28. In addition, Defendants have ordered, and have not cancelled, the manufacture of product bearing L & Leung's trademarks, including Emma Fox.

C. <u>Defendants Refuse to Cease Their Wrongful Activities</u>.

29. In or about late July 2017, L & Leung became aware of Defendants' egregious misconduct.  L & Leung's counsel sent a letter dated July 24, 2017 to Collection demanding, <u>inter alia</u>, that Defendants cease and desist from advising L & Leung's customers that L & Leung had had merged into Collection and/or was no longer operating, correct the previous statements to the contrary, cease and desist from infringing L & Leung's trademarks, and provide an accounting of all amounts diverted (Ex. 13 hereto).

30. Nevertheless, Defendants have refused to take the steps necessary to remedy their wrongful misconduct, other than to refrain, upon information and belief, from producing and/or selling goods bearing L & Leung's trademarks.  Indeed, Defendants have inexplicably maintained that their acts were not wrongful, thereby ratifying such acts.

D. <u>L & Leung Suffers Millions of Dollars in Damages</u>.

31. Defendants' misconduct has essentially destroyed L & Leung's business in the US.  Nunziata was the "face" of L & Leung's US operations, and Collection is a major player in the fashion industry.  After Defendants surreptitiously informed L & Leung's Customers and business partners that L & Leung had merged into Collection, that L & Leung ceased to operate, and that all vendor numbers and payments should be transferred to Collection, L & Leung's Customers and business partners have lost any and all faith and trust in L & Leung.  They continue to question whether L & Leung is truly an independent and viable going concern,

and have ceased doing business with L & Leung – despite numerous attempts by L & Leung to mitigate the severe damage Defendants have inflicted upon it.

32. Nunziata could have been up front with L & Leung about her desire to separately join Collection, and provide the ninety days written notice required for termination of the Agreement (Agreement § 14.1). This would have allowed L & Leung a transition period to maintain its customer and vendor relationships. Indeed, at one point before L & Leung became aware of Defendants' misconduct set forth herein, the parties discussed such a transition.

33. To the contrary, however, Defendants covertly sabotaged L & Leung's business with its customers and vendors, lied about it, misappropriated L & Leung funds, took steps to use L & Leung's trademarks, hired all personnel selling L & Leung product in the US, and left L & Leung's business in shambles.

34. Thus, since on or about June 2017, L & Leung's business has been essentially grounded to a halt, resulting in damages in an amount to be determined at trial, but believed to be in excess of $4 million.

FIRST CAUSE OF ACTION
(Tortious Interference With Business Relations, against Defendants)

35. L & Leung repeats and realleges each and every allegation set forth above as if fully set forth herein.

36. As set forth above, L & Leung had long-term and lucrative business relations with its L & Leung Customers and business partners.

37. Defendants had full knowledge of L & Leung's relationships with its L & Leung Customers and business partners.

38. Defendants interfered with those business relations by, among other things, wrongfully and fraudulently advising L & Leung's Customers and business partners that

L & Leung had ceased operations and had merged into Collection, which was untrue.

39. Thus, Defendants used dishonest, fraudulent, unfair and improper means in interfering with L & Leung's business relations.

40. As a result of Defendants' interference, L & Leung's long-time relationships with its customers and vendors have been destroyed. L & Leung's Customers and business partners have lost trust with respect to whether L & Leung is an ongoing operation or has merged into Collection.

41. Despite L & Leung's numerous attempts to advise its customers and business partners of the truth, L & Leung has not yet been able to repair the relationships and resurrect its business.

42. Thus, as a result of Defendants' misconduct, L & Leung's monthly revenues since at least June 2017 have dropped by an average of well over $500,000 a month.

43. Collection is directly liable for such tortious interference as it acted in concert with Nunziata and/or for its own benefit. Collection is also liable under the doctrine of respondeat superior as Nunziata was acting in furtherance of Collection's interests and within the scope of her employment with Collection. In the alternative, Collection is liable under the doctrine of ratification.

44. Defendants' statements have impugned the basic integrity and/or creditworthiness of L & Leung's business, and therefore injury is conclusively presumed.

45. As a consequence of the foregoing, L & Leung has been damaged in an amount to be determined at trial, but believed to be in excess of $4 million, plus interests, costs, attorneys' fees and punitive damages to the extent allowable by law.

## SECOND CAUSE OF ACTION
(Unfair Competition, against Defendants)

46. L & Leung repeats and realleges each and every allegation set forth above as if fully set forth herein.

47. As set forth above, Defendants have made fraudulent misrepresentations to L & Leung's Customers and business partners that L & Leung's business has ceased and that it has merged into Collection. Further, Defendants have misappropriated L & Leung's funds and receivables and wrongfully used its trademarks.

48. Defendants did so in order to obtain a commercial advantage belonging to L & Leung. In particular, Defendants wrongfully diverted L & Leung's business for themselves.

49. Defendants acted in bad faith, as they were and are aware that their representations are and were false. This is further evidenced by their refusal to correct their misstatements.

50. As set forth above, Collection is liable not only directly but also under the doctrines of respondent superior and/or ratification.

51. As a consequence of the foregoing, L & Leung has been damaged in an amount to be determined at trial, but believed to be in excess of $4 million, plus interests, costs, attorneys' fees and punitive damages to the extent allowable by law.

## THIRD CAUSE OF ACTION
(Trade Libel, against Defendants)

52. L & Leung repeats and realleges each and every allegation set forth above as it fully set forth herein.

53. As set forth above, Defendants knowingly made false and derogatory statements to third parties regarding L & Leung and its business of a kind calculated to prevent

others from dealing with L & Leung, to L & Leung's detriment.

54. Such false and derogatory statements caused special damages to L & Leung in the form of actual lost dealings with its Customers and business partners.

55. As a consequence of the foregoing, L & Leung has been damaged in an amount to be determined at trial, but believed to be in excess of $4 million, plus interest, costs, attorneys' fees and punitive damages to the extent allowable by law.

## FOURTH CAUSE OF ACTION
(Conversion, against Nunziata)

56. L & Leung repeats and realleges each and every allegations set forth above as if fully set forth herein.

57. As set forth above, Nunziata took possession of checks in the amount of $182,636.07 made payable to L & Leung and deposited the checks into her own account.

58. Thus, Nunziata converted proceeds belonging to L & Leung, without the knowledge or consent of L & Leung.  Further, as set forth above, Nunziata made fraudulent statements or omissions in an attempt to hide her wrongdoing from L & Leung.

59. Upon information and belief, such proceeds are being held in a separate account.

60. As a consequence of the foregoing, L & Leung has been damaged in an amount to be determined at trial, but believed to be in excess of $182,636.07, plus interest, costs, attorneys' fees and punitive damages to the extent allowable by law.

## FIFTH CAUSE OF ACTION
(Breach of Contract against Nunziata)

61. L & Leung repeats and realleges each and every allegation set forth above as if fully set forth herein.

62. As set forth above, in the Agreement, Nunziata agreed, <u>inter alia</u>, to act in the interest of, and on behalf of, L & Leung.

63. Nunziata materially breached the Agreement by, <u>inter alia</u>, wrongfully advising L & Leung Customers and business partners that L & Leung had ceased operations and had merged into Collection, by diverting proceeds and receivables of L & Leung, and by using L & Leung's trademarks.

64. L & Leung substantially performed its obligations under the Agreement.

65. Nunziata could have provided ninety days written notice of termination of the Agreement pursuant to § 14.1, which would have given L & Leung the opportunity to maintain its customer relationships and receivables. Instead, Nunziata engaged in the wrongful conduct set forth herein, causing severe injury to L & Leung.

66. As a consequence of the foregoing, L & Leung has been damaged in an amount to be determined at trial, but believed to be in excess of $4 million, plus interest and costs as allowable by law.

SIXTH CAUSE OF ACTION
(Money Had and Received, against Nunziata)

67. L & Leung repeats and realleges each and every allegation set forth above as if fully set forth herein.

68. Nunziata received at least $182,636.07 in funds belonging to L & Leung.

69. Nunziata benefited from receipt of the money.

70. Under principles of equity and good conscience, Nunziata should not be permitted to keep the money.

71. Accordingly, L & Leung has been damaged in an amount to be determined at trial, but believed to be in excess of $182,636.07, plus interest and costs to the extent

allowable by law.

      WHEREFORE, L & Leung demands judgment as follows:

(i)    On the First Cause of Action, an amount to be determined at trial, but believed to be in excess of $4 million, plus interest, costs, attorneys' fees and punitive damages to the extent allowable by law.

(ii)    On the Second Cause of Action, an amount to be determined at trial, but believed to be in excess of $4 million, plus interest, costs, attorneys' fees and punitive damages to the extent allowable by law.

(iii)    On the Third Cause of Action, an amount to be determined at trial, but believed to be in excess of $4 million, plus interest, costs, attorneys' fees and punitive damages to the extent allowable by law.

(iv)    On the Fourth Cause of Action, an amount to be determined at trial, but believed to be in excess of $182,636.07, plus interest and costs to the extent allowable by law.

(v)    On the Fifth Cause of Action, an amount to be determined at trial, but believed to be in excess of $4 million, plus interest and costs as allowable by law.

(vi)    On the Sixth Cause of Action, an amount to be determined at trial, but believed to be in excess of $182,636.07, plus interest, costs, attorneys' fees and punitive damages to the extent allowable by law.

      (vii)    for such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 27, 2017

      SULLIVAN & WORCESTER LLP

By: /s/ Gerry Silver
      Gerry Silver
      1633 Broadway, 32nd Floor
      New York, New York 10019
      Telephone: (212) 660-3096
      Facsimile: (212) 660-3001
      gerry.silver@sandw.com
      *Attorneys for Plaintiff*