

Sullivan & Worcester LLP
1633 Broadway
New York, NY 10019

212 660 3000
sullivanlaw.com

July 8, 2019

**BY ECF FILING**
Hon. Deborah A. Batts
United States Courthouse
500 Pearl Street, Courtroom 2510
New York, New York 10007-1312

    Re: L & Leung Leatherware Limited v. Collection XIIX Ltd. and
       Lisa Nunziata, 17 Civ. 7374 (DAB) (GWG)

Dear Judge Batts:

  We represent plaintiff L & Leung Leatherware Limited ("Plaintiff","Leung Leatherware" or "L & L") in this action against defendants Collection XIIX Ltd. ("Collection") and Lisa Nunziata ("Nunziata") ("Defendants"). We hereby set forth the proposed basis for summary judgment in favor of Plaintiff and against Defendants on all claims and counterclaims in this action. This is a relatively simple dispute involving breach of contract and misappropriation of a business (customers, orders, employees), the material facts of which are not in dispute.

## UNDISPUTED BACKGROUND FACTS

  Leung Leatherware, a Hong Kong corporation that manufactures and/or distributes handbags to retailers, entered into an agreement with Nunziata (the "Agreement") dated October 2, 2009 providing for Nunziata to "manage L & L's operations in the USA and represent the business transactions of this operation in the interest of L & L" (Agreement p. 1 § 3). Nunziata further agreed to "represent L & L for its commercial matters regarding its brand and private label business" (Agreement p. 2 § 3). Significantly, the Agreement provided: "Either party may terminate this agreement forthwith by written notice to the other party no less than 90 (ninety) days in advance" (Agreement §§ 3 and 14.1). No such termination occurred.

  The Leung Leatherware U.S. operation was run through a corporation owned 50-50 by Nunziata and Andrew Leung, a principal of Leung Leatherware, named Metamorphosis Inc. ("Metamorphosis"). Metamorphosis "did business as" L & Leung or L & Leung Design Group.

  The U.S. operation was primarily financed through sales revenue. In sum, the U.S. operation would obtain orders from customers (retailers such as Macy's or Hudson Bay); Leung Leatherware would manufacture or obtain the handbags to fill the orders; Leung Leatherware would essentially "sell" the handbags at a profit to the U.S. operation; retail customers would deliver checks to the U.S. operation made payable to Leung Leatherware; Nunziata and/or her team would deposit the checks into the Leung Leatherware bank account; and Leung Leatherware would use remaining U.S. operation revenues to pay salaries, earned commissions and other expenses. However, when there was insufficient revenue to cover expenses, Leung Leatherware would provide or "loan" additional capital into the U.S. operation ("Loans"), which would be repaid from future revenues.

## UNDISPUTED FACTS RE: DEFENDANTS' BREACH AND/OR MISCONDUCT

In or about February 2017, Andrew Leung met with Nunziata and discussed reducing expenses, such as the expensive N.Y. office lease, to make the U.S. operation more profitable. Instead, Nunziata suggested finding a "finance partner" to help cover the current expenses. The parties agreed to maintain status quo while Nunziata searched for a "finance partner".

However, as established in Defendants' deposition testimony and emails, Nunziata, while continuously telling Leung Leatherware she was looking for a "finance partner", began surreptitiously attempting to move the entire U.S. operation to another company, and to leverage that business to obtain lucrative new employment for herself. First, in or about March or April 2017, she entered into discussions with Haskell Design Group ("Haskell") regarding a draft employment agreement for herself, and the U.S. operation began secretly taking orders from retail customers in Haskell's name, not Leung Leatherware's. Sales and revenues for Leung Leatherware began to plummet, and Leung Leatherware made additional Loans.

Subsequently, in May/June 2017, Nunziata pivoted away from Haskell and entered into similar discussions with Collection. Acting as an agent and/or employee of Collection, with Collection's knowledge and at Collection's direction, Nunziata and her team transferred all the Haskell orders into Collection's name and began taking orders in the name of Collection – without advising Leung Leatherware but instead misrepresenting that Nunziata was continuing to look for a "finance partner". Even worse, Nunziata and Collection indisputably sent emails to all of Leung Leatherware's retail customers that L & Leung was "merging with Collection" and sent a press release to that effect. Further, Nunziata indisputably diverted $182,636.07 in checks made payable to Leung Leatherware into a newly opened bank account she opened in Leung Leatherware's name – while claiming in writing that such checks were not received.

Once Leung Leatherware learned of Defendants' actions, it contacted the retail customers to try to recover the business, but the damage was already done – the customers believed Leung Leatherware no longer existed and had begun dealing exclusively with Nunziata and her team who had joined Collection. Leung Leatherware's business was destroyed.

Significantly, while Nunziata was free to terminate the Agreement and obtain other employment, and will argue she had good reasons for doing so, such as that she allegedly thought Andrew Leung was retiring, Nunziata was first required to be forthright and provide Leung Leatherware with 90 days notice so that Leung Leatherware could take steps to retain the employees, obtain a replacement for Nunziata, and maintain/transition the U.S. operation. Instead, Nunziata breached by failing to provide the notice and secretly acting, within the scope of her agency or employment with Collection, to interfere with and misappropriate the business.

Leung Leatherware is entitled to summary judgment on its breach of contract, money had and received and conversion claims against Nunziata, and tortious interference, unfair competition, and trade libel claims against Collection and Nunziata, and to lost incremental profits of $2,200,451, diverted checks of $182,636.07, and now-unrecoverable Loans of $992,125 (see Plaintiff's expert report). Defendants' counterclaims/claims are barred by their prior wrongful conduct, the terms of the Agreement and/or principles of corporate form.

Hon. Deborah A. Batts
Page 3
July 8, 2019

                                               Respectfully submitted,
                                               /s/Gerry Silver, Esq.
                                               Gerry Silver
                                             Direct line: 212-660-3096
                                             gsilver@sullivanlaw.com