

BRETT BERMAN
Direct Dial: (212) 878-7900
Email Address: BBerman@FoxRothschild.com

July 18, 2019

**VIA ECF**

The Honorable Deborah A. Batts
United States District Court
United States Courthouse
500 Pearl Street, Room 2510
New York, NY 10007

Re:   **L & Leung Leatherware Limited v. Collection XIIX Ltd. et al**
      **Index No. 1:17-cv-07374-DAB**

Dear Judge Batts:

Fox Rothschild LLP represents Collection XIIX Ltd. ("Collection XIIX") and Lisa Nunziata ("Nunziata", and together with Collection XIIX, "Collection") in the above-referenced matter. Please allow this letter to serve as Collection's response to the July 8, 2019 letter of L & Leung Leatherware Limited ("L & Leung").

L & Leung is seeking to move for summary judgment based on pure factual disputes, which is improper and grounds for dismissal of the motion. *Aetna Cas. And Ins. Co. v. U.S.*, 685 F. Supp. 334, 336 (E.D.N.Y. 1988) ("If there exists a genuine dispute about a material fact, then summary judgment is not appropriate"), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As set forth below, the facts which L & Leung cite as the basis for its motion are directly disputed by Collection. L & Leung is clearly overreaching in requesting summary judgment from this Court.

**The February 2017 meeting:**   L & Leung's portrayal of the February 2017 conversation is highly disputed by Collection. Where L & Leung portrays this meeting as a brainstorming session regarding cost-cutting measures, in fact, during this meeting Andrew Leung ("A. Leung") informed Nunziata that he was retiring, shutting down his overseas factory and winding down business operations in the United States. It was made clear to Nunziata by A. Leung that she would be on her own and that it was her job and her job alone to keep the business afloat. L & Leung would no longer be paying operating expenses or making payroll. L & Leung was not only aware of, but, in fact, *directed* Nunziata to find a new business partner.

**The Role of the "Finance Partner":**   The parties' interpretation of the role of the so-called "finance partner" lies at the heart of this action and is heavily in dispute. L & Leung's primary

The Honorable Deborah A. Batts
July 18, 2019
Page 2

two roles in the business were 1) to provide handbags manufactured in their factory and 2) to supply the Metamorphosis office with operating funds. There is ample testimony from both sides that A. Leung informed Nunziata that L & Leung would be ceasing both of these functions. Thus, any claim by L & Leung that Nunziata was "surreptitiously attempting to move the entire U.S. operation to another company" is belied by the fact that A. Leung encouraged Nunziata to find a partner to work since he was getting out of the business. In addition, Nunziata kept L & Leung informed of her negotiations with prospective business partners.

It is unclear exactly what L & Leung's definition of "finance partner" is. However, if the partner was going to be providing funds to Metamorphosis, it becomes clear that L & Leung expected to relieve itself of its contractual obligations to Nunziata and Metamorphosis while still claiming entitlement to monetary benefits resulting from the latter's hard work.

**Decreasing Sales and Revenue**: L & Leung's decreasing sales and revenue were attributable not to any conduct by Nunziata, but due to the poor quality of the bags and increasing costs of production in China. A. Leung himself testified that the company lost customers due to poor bag quality and high prices as compared to competitors.

**The Deposit of $180,000 In Checks**: L & Leung attempts to paint a picture of Nunziata misappropriating funds made payable to L & Leung and using them for her own benefit. In fact, as set forth in Collection's July 8 letter, these funds were used entirely to pay business expenses of Metamorphosis after L & Leung had cut off monies to the company and left Nunziata without the ability to pay operating costs, employees and bills. Further, Nunziata was forced to deposit the funds into a separate account because A. Leung informed her that L & Leung's business bank account had been frozen. There was no diversion and L & Leung is not entitled to the $180,000. Rather, Nunziata had no choice but to deposit funds into a new account and such funds were used to pay legitimate business expenses.

**Termination of the Agreement:** L & Leung misrepresents the circumstances surrounding termination of the agreement. In fact, both parties were required to provide written notice to the other 90 days in advance of termination. L & Leung was itself free to terminate the agreement, but chose not to, with the expectation that it would still profit off the bags sold by Nunziata and manufactured by someone else. However, L & Leung did not terminate the agreement and breached its terms by failing to provide working capital to the Metamorphosis office and by denying Nunziata her earned compensation

There are additional issues which remain in dispute on this matter, which Collection will demonstrate to the Court at a conference on these motions or in their papers. Collection reserves the right to amend and add to this list at such time as L & Leung files its motion for summary judgment.

Respectfully submitted,

Brett A. Berman