UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
L & LEUNG LEATHERWARE LIMITED,  : CIV. 17-CV-7374 (DAB)
        Plaintiff, :
        -against- :
COLLECTION XIIX ET AL., :
        Defendants. :
---------------------------------------------------------------x

## **DECLARATION OF LISA NUNZIATA**

LISA NUNZIATA declares pursuant to 28 U.S.C. §1746 as follows:

1. I am personally familiar with the facts set forth below and respectfully submit this declaration in support of the Motion to Dismiss dated September 13, 2019.

2. I worked with Andrew Leung in a business partnership from approximately 2006 to 2017.

3. In the partnership, my role was to design, develop, market and sell leather handbags and Mr. Leung's role was to manufacture the products, which were then delivered to retail customers in New York and other parts of the United States.

4. Mr. Leung attempted to fulfill his end of the partnership through a company he co-owned with his wife called L & Leung Leatherware Limited.

5. L & Leung was based in Hong Kong and handled the manufacture of handbags, predominantly through a factory owned by L & Leung.

6. Around 2009, Mr. Leung and I started a new company, Metamorphosis, for sole the purpose of conducting sales for L & Leung in New York and the United States. We each owned fifty percent of Metamorphosis.

7. Metamorphosis was formed specifically to act as a sales agent, among other things, for L & Leung and maintained a New York City office and showroom at 320 Fifth Avenue.

8. It is my understanding that L & Leung had been operating out of this space since signing a lease in 2004 until approximately late 2017.

9. My title at Metamorphosis was President and my job was to work out of the New York City office and design handbags and make sales to New York customers and other customers in the United States for L & Leung.

10. I received commission and salary from L & Leung for sales I made.

11. At all times from 2006 until 2017 when I was hired by Collection XIIX, I was expressly authorized to act on behalf of L & Leung.

12. I had authority to sign contracts and other documents on behalf of L & Leung and L & Leung's parent company, L & Leung Handbags Mfy Ltd.

13. All customers in New York and in the United States placed their purchase orders through Metamorphosis, but the purchase orders were made out in the name of L & Leung.

14. L & Leung, not Metamorphosis, was named as the vendor of record and given the vendor number for all of its customer accounts.

15. All monies from sales to customers in New York and in the United States were either (1) received by Metamorphosis in New York in U.S. dollars but then paid directly to the L & Leung HSBC bank account in New York or (2) paid to L & Leung's bank account via direct deposit from customers.

16. Metamorphosis did not receive funds directly from customers. All of Metamorphosis' expenses, salaries and operating costs were submitted for review by L & Leung. L & Leung then forwarded Metamorphosis funds to make these payments.

17. L & Leung would send funds via check or wire transfer to Metamorphosis' Chase bank account in New York. These funds were then used to pay salaries, commissions, and other operating expenses.

18. L & Leung excluded Metamorphosis from all financial information regarding the production of handbags, including cost breakdowns of manufacturing and price negotiations with suppliers.

19. Metamorphosis designed, developed, marketed and sold handbags for only L & Leung. L & Leung was 100% of Metamorphosis' business.

20. All of L & Leung's United States customers travelled to the New York City office to view samples and develop products prior to making their purchase orders. Customers came to New York approximately once a season for a total of four times a year every year up through 2017.

21. In other words, 100% of L & Leung's United States sales originated out of buyers' visits to the New York City office.

22. The vast majority of L & Leung's business was conducted through Metamorphosis' New York City office, although L & Leung may have had a few customers in Europe.

23. L & Leung sent its executives from Hong Kong, including Mr. Leung and Mark Leung, his son and second-in-command, approximately once a year to handle matters related to L & Leung's New York sales.

24. L & Leung also sent employees to the New York City office to work on and develop processes by which the business would operate.

25. L & Leung had a direct business relationship with customer accounts that were not run through Metamorphosis.

26. These accounts included the Dillard's and Belk department store chains.

27. In order to maintain the Dillard's account and starting in approximately 2012 through 2017, Mr. Leung gave me authority to act on behalf of L & Leung and directed me to work with Dillard's buyers, who would travel to the New York City office.

28. As an agent of L & Leung, I showed Dillard's buyers samples, worked with them to develop product and placed orders for them.

29. Brenda Kaneday, an employee of Metamorphosis, was also authorized and directed by L & Leung to work with Dillard's buyers to facilitate their purchase orders with L & Leung.

30. The work that we performed for Dillard's was directly on behalf of L & Leung and had no connection whatsoever with Metamorphosis.

31. The Dillard's sales were not counted as sales completed by Metamorphosis and the monies from Dillard's sales were not part of the funds supplied to the Metamorphosis office for expenses, like the rest of the sales conducted by Metamorphosis.

32. Similarly, Ms. Kaneday and I worked with Belk buyers who came to the New York City office to review samples and develop products with us.

33. The work that we performed for Belk was directly on behalf of L & Leung and had no connection whatsoever with Metamorphosis.

34. The Belk sales were not counted as sales completed by Metamorphosis and the monies from Belk sales were not part of the funds supplied to the Metamorphosis office for expenses, like the rest of the sales conducted by Metamorphosis.

35. All payments from Dillard's and Belk were made directly to L & Leung without ever passing through Metamorphosis.

36. The Dillard's and Belk buyers would come to the New York City office regularly, multiple times a year to develop and purchase handbags from L & Leung.

37. It is also my understanding that L & Leung advertised for a New York VP of Sales and Marketing in August 2017.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   September 12, 2019

_____  9/12/2019
Lisa Nunziata